8 WS 107
216     606

# Robb *against* Beaver.

A husband and wife seised, in right of the wife of an estate of inheritance, " granted, demised, leased, set and to farm let the same unto A. B., to have and to hold to the said A. B., his heirs and assigns, from the day of the date hereof, for and during the existence of the world, he yielding and paying therefrom and thereout yearly and every year hereafter to the said grantors, their heirs and assigns, the yearly rent of $100;" and in the same deed the grantees covenanted to erect a house upon the premises of the value of $400; and upon their failure so to do, a right to the grantors to re-enter was reserved: *Held*, that upon the death of the wife the husband was seised of the whole estate, created by the deed, in fee, and that it was subject to a levy and sale for the payment of his debts.

ERROR to the District Court of *Allegheny* county.
John F. Beaver, Esquire, against Robert Robb. This was an

[Robb v. Beaver.]

amicable action in which the parties agreed to a special verdict, the substance of which may be thus stated:

William Pentland and Mary his wife were seised in right of the wife of certain lots in the city of Pittsburgh, which they disposed of to various purchasers by deeds of perpetual lease, as they are usually styled, reserving certain rents to the grantors jointly. William Pentland surviving his wife, judgments were obtained against him, and these rents were levied on as his property. John Harper the plaintiff in the first execution assuming that the interest of William Pentland in the rents was but a life estate, petitioned the court to appoint a sequestrator; and the defendant in this case, Robert Robb, Esq., was thereupon duly appointed by the court, and continued for some time to receive the rents. Afterwards the same rents with other property of Pentland were levied on at the suit of the Merchants & Manufacturers' bank, and assuming that the title of Pentland was a fee-simple, the sheriff proceeded to sell them, and made a deed to John F. Beaver, Esq. the plaintiff in this issue, for all the ground-rents which had been previously sequestered and in the hands of the defendant.

Afterwards a rule was obtained in the case of *Harper* v. *Pentland*, on Robert Robb, Esq. the sequestrator, to show cause why the writ of sequestration should not be set aside. On argument of this rule, the court ordered an issue to be tried for the purpose of ascertaining " the quantity of estate William Pentland as survivor of his wife (late Mary Watson) had in the premises set forth in the schedule and levy."

The plaintiff contended that William Pentland was seised in fee of the rent in question; the defendant that he had but a life estate in his own right, the remainder in fee being in the children of Mary Pentland. The deeds made by Pentland and wife on which the rents in question were reserved, were all in the same form, and contained the same covenants, the material words of which were as follows:

" William Pentland and Mary his wife have granted, demised, leased, set, and to farm letten, and by these presents do grant, demise, lease, set, and to farm let unto A. B. all that lot, &c. To have and to hold to the said A. B., his heirs and assigns, from the day of the date hereof, for and during the existence of the world, yielding and paying therefrom and thereout yearly and every year hereafter to the said William Pentland and Mary his wife, their heirs and assigns, the yearly rent, &c." Beside the usual covenants to pay the rent, the grantee also covenanted to build " a good and substantial building of the value of $400," on the property demised. The grantors to have a right to enter and distrain for rent in arrear; and if two years' rent remained unpaid, might enter and without hindrance, hire, rent or demise to any other tenant for the best rent that could be obtained, and for such term of time as should be sufficient to pay all arrears, &c. "And the

said A. B. (grantee), his heirs and assigns do further covenant, that if they the said, &c. do neglect and fail to erect and complete the buildings hereby stipulated to be erected on the said demised premises within the time specified for that purpose, then it shall and may be lawful for the said William Pentland and Mary his wife, their heirs and assigns, to enter on the said demised premises, and to expel and put out any and every person found thereon, and to let, lease and demise the same at his or their pleasure for any term not exceeding five years from such re-entry, and in case of the neglect or refusal of the said A. B. (grantee), his heirs or assigns, to give good satisfactory security within the said five years, for the faithful performance of his covenants in relation to the completing of the said buildings, then at the termination of five years from such re-entry, the estate of the said William Pentland and Mary his wife, their heirs and assigns, shall become absolute in the premises, at law and in equity, to all intents and purposes, as if this indenture had never been made; and in like manner, if after a re-entry upon the said premises for two years' rent being in arrears, if the said A. B., his heirs or assigns shall for five years after such re-entry neglect or fail to pay and discharge the rents in arrears, and the rents accruing with interest and costs, and if the same be not fully paid at the end of five years from the time of the re-entry as aforesaid, then the estate of the said William Pentland and Mary his wife, their heirs or assigns, shall become absolute in the said demised premises at law and in equity to all intents and purposes as if this indenture had never been made."

Upon argument, the following opinion was delivered by .

GRIER (President). — The question for our decision is, what estate did William Pentland take in the rents thus reserved.

1. It needs neither argument nor authority to show that the grantees in these deeds take an estate in fee-simple in the land demised. Nor is this the less true, because the estate granted is on condition. A condition annexed to an estate given, is a divided clause from the grant; therefore cannot frustrate the grant precedent. *Hob.* 170 ; 2 *Cruise* 2.

2. It is equally plain that the rent reserved, whether we call it a fee farm rent (as we with propriety may in this State, where the statute *quia emptores* is not in force) or a rent-charge, is an estate of inheritance, and governed by the same rules as to quantity of estate as other estates of inheritance.

3. It cannot be denied that a feme covert in conjunction with her husband may alien her lands in fee-simple, or for any less estate, by deed acknowledged in due form, as effectually as by a fine or recovery; and that this alienation may be for such consideration as she and her husband may choose to accept; and that if the consideration be a sum of money, such money when re-

ceived vests absolutely in her husband; and further that the alienee may, on return of the consideration money, make a valid conveyance of the same property to the husband and his heirs; nor would any court, either of law or equity, trust the husband in such a case as a trustee for his wife. Nor do I believe any decision can be found in the books that establishes the doctrine, " that if husband and wife sell wife's land, and for bonds made payable to the husband, and husband die, his administrators shall not have the bonds." In England, where the estate of the wife can be conveyed only by fine and recovery, it has been decided that " as a married woman is allowed to join with her husband in levying a fine and suffering a recovery, she is also allowed to join with him in declaring the uses of them; and although the wife should be an infant, yet her declaration of the uses of a fine or recovery, if she be allowed to levy or suffer one, shall bind her; 4 *Cruise* 140; 2 *Roll. Abr.* 798; and if a husband alone declares the use of a fine levied by him and his wife of the wife's estate, it shall bind the wife unless her dissent appears; for when she joined her husband in the fine, it must be presumed that she consented to the declaration of the uses of it. 4 *Cruise* 141; 5 *Rep.* 57; *Swanton* v. *Raven*, (3 *Atk.* 105). It follows as a corollary, that if the husband and wife join in the declaration of the uses of a fine in which the estate is declared to be for the use of husband and wife and their heirs, this would be valid and binding on the wife and her heirs; nor can any case be found in which a court of chancery would declare the surviving husband to have but a curtesy estate, or that he is trustee for the heirs of his wife, as to the inheritance.

Now, what distinction can be produced in law or equity on the difference between holding a woman bound by her declaration of the uses of a fine, and not bound by the reservation of a rent to herself and husband on the sale of her estate? If she may sell for money, why not for a ground-rent? If she is competent to dispose of her land, why not of the consideration? If she is estopped by her deed from denying the estate conveyed to the grantee, why not as to the person entitled to the reserved rent? The indenture creates two estates, one on the land, the other in the rents; why should the words of the deed be construed to have their legal effect as to the one, and not to the other also? See *Pratt* v. *Lewis*, (4 *Whart.* 24). The husband and wife have each contributed their interest in the land, he his freehold and she her fee, to purchase a fee farm rent, or a rent-charge on the same land. The estate thus purchased is a joint one to them and their heirs. What right have the court to put any other construction upon this deed than that given by the law to the plain words of the reservation? For the rule of law is, that where the lease is by indenture of sundry persons, they are estopped to claim the rent in any other manner than it is reserved in the deed, because the indenture

[Robb v. Beaver.]

is the deed of each party, and no man shall be allowed to recede from his own solemn act.  2 *Roll. Abr.* 447 ;  *Co. Litt.* 47.

Nor can the rule that the rent follows the reversion affect this case, because it is a feoffment in fee to the grantee and his heirs, and there is no reversion in the heirs of the wife.  For if a man seised of lands of the part of his mother makes a lease for life, or gift in tail, reserving rent to him and his heirs, this rent shall go with the reversion to the heirs of the part of the mother, because the nature of the contract is such that the retribution should go to those that lose the profit of the lands during the lease or gift.  *Co. Litt.* 12 *b.*  But if he had made a feoffment in fee, reserving rent to him and his heirs, this rent shall go to the heir of the part of the father, because here is an entire disposition of the lands and the rent in the nature of a new purchase, coming into the family from the grant of the feoffee, and therefore the blood of the father shall be preferred.  *Co. Litt.* 426 ;  *Gilbert on Rents* 72 (marg.).

4. It is well settled, that if a husband and wife take to themselves an estate jointly during their marriage, they have not several estates, nor are they tenants in common, nor yet joint tenants in the proper or legal sense of the word; but in consequence of the union of their persons by marriage, each has the whole estate in the parcels granted, entirely as one person, so that on the death of either of them the whole estate belongs to the survivor.  8 *Coke* 71 *b* ; 2 *Vern.* 120 ; 2 *Cruise* 441.  Our Act of Assembly of 31st March 1812, concerning joint tenancy, which abolishes the right of survivorship between joint tenants, has never been construed to affect the joint estate of husband and wife, for the very sufficient reason that in law they are not joint tenants.

It would seem to follow, therefore, as a necessary conclusion from these premises, that William Pentland having survived his wife, has an estate in fee in the rents in question.  But it will be proper to notice some of the objections which have been so well urged by the counsel for defendant.  He contends that there is a rent service, and not a rent charge; that it is reserved out of the estate, and is not a new grant; that it is a creature of the lessor and not of the lessee.  That the wife by her acknowledgment of the deed, conveyed the land only to the grantee; and this is no conveyance of the reservation to her husband, or evidence of an intention in her that her estate in the rent should differ from her former estate in the land; and this is argued farther from the words of the condition in the deed, that in case of re-entry for covenant broken, and forfeiture of the estate, " then in that case the estate of the said William Pentland and Mary his wife shall become absolute in the premises, to all intents and purposes as if this indenture had never been made."  But to this I think it is well answered, that the rent is the creature (or the creation) of the deed, and that all the parties claiming anything under that deed are estopped from claiming any other estate than that con-

[Robb v. Beaver.]

veyed by the deed. That the covenants and conditions in the deed are for the purpose of compelling the performance of it by the grantee of the land, and pass by an assignment of the rent, so that if by legal forfeiture the estate be again revested in the grantors, they would be trustees for the assignee of the rent; therefore these words in the condition cannot be construed to set aside the fair legal effect of the reservation, the words of which are alone to direct us in our inquiry as to the quantum of estate which any party to the indenture can claim in the rent created by it. Scott v. *Lunt*, (7 *Peters* 604).

But the case of *Weeks* v. *Haas*, (3 *Watts & Sergeant* 520), is relied upon as establishing the doctrine, " that as the consideration has passed from the wife, the husband took the legal estate as trustee for her, and the law will imply such a trustee estate when her land has been conveyed in payment, and the object is not to part with the value of it but to reserve or take back an equivalent." The correctness of the arguments and doctrine asserted by the learned Chief Justice in that case cannot be doubted, when applied to the case before him. But to extract a sentence or two out of an opinion, without reference to the circumstances of the case to which they refer, is a sure road to error. No judge can speak oracles in every sentence, or write maxims of universal application to all cases. That was a case of partition; the object of the deed was partition, not conversion. There was no evidence whatever that the wife intended to make a gift to her husband. She acknowledged no deed or instrument of writing exhibiting any intention to convey her interest in the land or any portion of it to him. The releases to the husband were by the other coparceners; why then should not the implication of law be in her favour, when she had executed no instrument of writing showing an intention of devesting herself of any portion of her estate in favour of her husband or any other person, her release being only for the purpose of partition? And of the same nature are the cases referred to by the learned court in their opinion, where the wife's estate has been mortgaged, and her only object in becoming a party to the transaction was to permit a security to the mortgage, not to part with her equity of redemption to her husband; and even in such cases Chancellor Kent says, " if it be the true construction of the mortgage deed that the equity of redemption was intended by the wife to be reserved to the husband alone, it seems that he may take it. See *Demarest* v. *Wynkoop*, (3 *Johns. Chan. Rep.* 147).

But in the present case there is no room for implication. The rent is created by the deed, and the quantum of estate or title to it can be found only in the deed. *Broad* v. *Broad*, (2 *Chan. Ca.* 98, 161); *Ruscombe* v. *Hare*, (6 *Dow's Parl. Cas.*); 1 *Vern.* 213; 2 *Vern.* 437. The wife is party to the indenture, and is as much estopped by it as any other party who signed it. The deed shows on its face a plain intention of the wife to dispose of the fee in the

[Robb v. Beaver.]

land, and accept in lieu thereof a rent charge vested in herself and husband, and their heirs. She had power by law to vest the whole estate in her husband, for no consideration in fact save love and affection. She could have transferred her whole estate for a sum of money paid to her husband. Why shall not her deed bind her, when she has made a much better bargain for herself? Now although I am willing to go every length in the way of fair construction to protect the property of the wife from the rapacity of the husband, and fully concur with the declaration of the chief justice in *Ferree* v. *Elliott*, "that I will never consent to give effect to a claim by the husband, or those in his stead, to what was at any time the wife's real estate, when it is possible to defeat it by any construction, however forced," yet I believe a different construction than that which I have put on this deed, would be sheer legislation, and amount to a denial of the wife's power to convey her own estate in the mode pointed out by our statutes. It would be equivalent to annulling a joint declaration of uses made by husband and wife, on a fine levied by them; a power which no Court of Chancery in England ever assumed. 8 *Serg. & Rawle* 315.

Let judgment be entered for the plaintiffs.

This opinion was assigned for error.

*Hamilton*, for the plaintiff in error. The principal question is, what change was effected in Mary Pentland's estate, in the parts demised on perpetual lease, by joining with her husband, and reserving a rent payable to "the said William Pentland and Mary his wife, their heirs and assigns for ever." On the correct view of this question will depend the justness of the decision. What estate passes to the lessee on a lease such as those executed by Pentland and wife? Not an absolute fee, certainly; for the grant is clogged with the payment of rent, and the possibility of a re-entry. It must not be lost sight of that, at the date of the several leases, Mary Pentland was seised of the real estate subsequently demised in her own right. Her husband had no right therein greater than an estate by curtesy. What did she do, then, to devest herself of her estate? She made conditional grants of the several lots demised conjointly with her husband, which, had she been discovert, she could have made alone. But the argument on the other side is, that having united with his wife in the leases, and the rent reserved having been made payable to him and his wife, therefore he has a new estate—one as large as she had. That the reservation is a new grant—a new estate; and, being to husband and wife, they hold by entirety, *per tout*, and not *per my*.

Now, if this was a grant to husband and wife of a new estate which neither owned before, the doctrine of holding by entirety might be applicable, unless in construing the Act of March 31st, 1812, entitled "An Act concerning joint tenancy," the court should

[Robb v. Beaver.]

be of opinion that the intention of the Legislature was to abolish the *jus accrescendi* in such case; and with all due deference to the opinion of Judge Kent, I think it was evidently the design of the Legislature to abolish this right of survivorship, even in case of husband and wife; for the most general terms are used, " of whatever kind, the estate holden or possessed be;" " the part of those who die first shall not accrue to the survivor, but shall descend and be subject to debts, curtesy," &c. Now, there is no doubt that husband and wife are joint tenants of an estate acquired during coverture in some sense. Their estate has the four properties of joint tenancy—the unity of interest, title, time and possession; and every one concedes that it is incident to the *jus accrescendi*, which it was the manifest intention of the Legislature to destroy, unless altered by the Act of 1812. Our Act is a literal transcript of the Act of Virginia upon the same subject: and Judge Tucker, in his notes on *Blackstone*, inclines to the opinion that the *jus accrescendi* is abolished in the case of a joint estate held by husband and wife. Vide 3 *Tucker's Blackstone* 181, n.

But I deny that the rent reserved in the leases referred to was a new grant. It is the creature of the lessor, not of the lessee. It is the consideration on which the lease is made, and without which it would not have been made. It is the terms upon which the lease must be accepted, or not at all. They are dictated by the lessors, and the grant accepted subject to them, which grant would be inoperative without them.

The fundamental error of the plaintiff is in supposing that William Pentland and Mary his wife granted an absolute fee-simple in the premises demised to the lessees, and that they in turn granted to the lessors a fee-simple in the rent. It is so in a limited sense, and not otherwise; or perhaps it is more correct to say it is not so except in a qualified sense; that is to say, each of the parties may be said to have a fee-simple, the one in the land, the other in the rent, so long, and so long only as they severally enjoy the one the land and the other the rent; *Plowden* 557; 1 *Cruise, tit.* 1, *sect.* 80; but the moment the land becomes forfeited to the lessors by a failure on the part of the lessees to perform the covenants and stipulations in the lease, the fee in the land is gone as to them; 1 *Cruise, tit.* 13, *Ch.* 2, *sect.* 37; and the fee in the rent is gone as to the lessors. The former is gone by agreement of the parties, and the latter is merged by operation of law in the fee-simple of the land re-invested in the lessors. *Vide title I., sects.* 45, 46, 1*st vol. Cruise on Real Property, and note*; 2 *Cowen* 246; 1 *Cruise, title* 13, *ch.* 2, *sects.* 50, 51. It is manifest, therefore, that the estate granted to the lessees by Pentland and wife was not a fee-simple absolute, but only a conditional, qualified, or defeasible one. But the very language of the leases demonstrates this. The words " grant, bargain, sell, alien, enfeoff, release, and confirm," are not made use of; but words that clearly

show the nature of the estate intended to be conveyed, viz: "grant, demise, lease, set, and to farm-let;" besides, in a deed intended to convey a fee-simple absolute are contained the words, "the reversions and remainders, rents, issues, and profits thereof," &c. ; but in these deeds of lease no such words are contained. Of course it is clear that the lessors granted, and the lessees took a conditional or defeasible estate.

But, it may be asked, what has this to do with the question at issue, viz, "the quantum of estate vested in William Pentland by force of the reservation in the lease?" I think it has a great deal to do with it. It serves as a guide to the intention of the parties interested; and it answers the question, "do these deeds of lease increase the estate of William Pentland, or lessen that of his wife?" The leases contain a provision that if the said lessees shall not within five years after the re-entry of the lessors for condition or covenant broken, comply therewith, then and in that case "the estate of the said William Pentland and Mary his wife shall become absolute in the premises, to all intents and purposes as if these indentures had never been made." But if the indenture had never been made, the fee-simple, subject to curtesy, was in Mary Pentland and her heirs, and not in her husband: she was seised in her own right, and her husband was seised in her right. 1 *Saund. Rep.* 253, *note* 4; 1 *Douglass* 329; 2 *Saund.* 283, *n.* 1; 2 *Lutw.* 1421.

If the estate became forfeited, what estate would become absolute? Not the rent, for that the lessors had a right to without a forfeiture. It must be the estate as it was prior to the date of the leases; the interest of the lessees reinvested in the original owner; but Mary Pentland was the original owner; therefore the estate would reinvest in her, subject, as originally, to the curtesy of the husband. That is, Mary Pentland would be in as of her former estate. But does there not another consequence follow from this? It is clear, to me, there does. It is inevitable, that if Mary Pentland was in, that is, seised of her former estate, William Pentland was in as of his former estate, too. The estate of William Pentland was not enlarged, nor that of his wife diminished. By the common law of Pennsylvania a feme covert might, by joining in a deed with her husband and undergoing a separate examination, convey her real estate. 1 *Dall.* 11, 17; 1 *Peters's C. C. Rep.* 188; *Preamble to the Act of* 24th *Feb.* 1770. This she conld not do in that manner by the common law of England. 1 *Black. Com.* 444. Since the Act of 24th Feb. 1770, which is in affirmance of the common law of Pennsylvania, a feme covert can alien her real estate only in the mode pointed out by that Act; 8 *S. & R.* 303, 304; and I ask, what is there on the face of these deeds of lease, to show an intention on the part of Mary Pentland to grant any estate to him? She did grant an estate to the lessees; and it is not denied that she might have granted her estate to her husband, if she had

so willed; but did she do this? Certainly not. It is true she (or perhaps it might be more properly said that he), reserved the rents payable " to William Pentland and Mary his wife;" (for he wrote the leases with his own hand). No argument can be drawn from this; because in no other way could she have sold or leased her real estate, than by uniting with her husband in the deed; 8 *Serg. & Rawle* 303, 304; the Act of Assembly authorized her to do it in this way only; and it was right and proper that he should be a party to the leases, as it is a general rule that he must join; and that it might appear on the face of the deed that he was present to protect her from imposition. 2 *Kent's Com.* 152–154.

But it may be said there was no legal necessity to make the rents payable to William Pentland. That is very true; and if a disinterested hand had penned the leases, unless expressly instructed otherwise, the rent would have been made payable to Mary Pentland and her heirs. But it by no means follows that making the rents payable to William Pentland and Mary his wife, makes him the owner of these rents absolutely, even surviving her; for if Mary Pentland had a fee in these rents, she could not divest herself of that fee in any mode other than that directed by the Act of Assembly; but this she never did, as to the rents, and of course they could not vest in her husband other than as tenant by the curtesy. The mere reservation in the lease could not have that effect; for here was no new grant by the lessee; the rent reserved is a rent service, not a rent charge, which it would have been if the lessees had had the fee-simple in the lands, and had granted a rent to Pentland and wife and their heirs, and charged their lands for its payment with a clause of distress. See *Ingersoll* v. *Sergeant*, (1 *Whart.* 337). There was no new independent estate created by these leases. I deny that the rent reserved was a new grant. It was the creature of the lessor, not of the lessee. It is the consideration on which the lease is made, and without which it would not have been made. It is the terms upon which the lease must be accepted, or not at all. They are dictated by the lessors, and the grant accepted subject to them. It was that annual return, which, if reserved, although not made payable to any one, the law would distribute to the owner prior to the demise, or his heirs; 3 *Saund. R.* 370, *note* 5; *Whitlock's Case*, (8 *Rep.* 138), for the land demised.

But the land, prior to the leases, was Mary Pentland's, and therefore the rents must be her's too, unless she did something to devest herself of them. There is nothing tending to show that she did anything with that view, but the reservation of the rent payable to William Pentland and Mary his wife. Now this proves too much; for if she had designed to make a gift of the rents and her estate in the land to her husband, she would have made the rents payable to him alone, and clothed him with the exclusive right of re-entry for condition broken. And even if she had done

[Robb v. Beaver.]

that, it would have required clear evidence of her intention to devest herself and her heirs of her estate before this would be so construed. 1 *Vern.* 213; *Ambl.* 687; 2 *Ibid.* 407; 2 *Chanc. Cas.* 98, 161; 1 *Bligh* 104. But this intent is negatived by the terms of the lease; for the right of re-entry and to receive the rent are reserved to William Pentland and Mary his wife; which is the same as if they had been reserved to Mary Pentland and her husband; and if this phraseology had been adopted, it would have been clear that the reservation to him or the use of his name at all, went upon the supposition that as he is viewed as her legal guardian, it was necessary to use his name as well as her's, for conformity.

But if any portion of her former estate can re-invest in Mary Pentland by virtue of her re-entry, this, it strikes me, is conclusive that she has never parted with such portion, nor indeed with any portion of her former estate, and that she never intended to part with it. By the very terms of the lease she had reserved to herself the right of re-entry; and if after such re-entry the lessees failed for a certain time to comply with the covenants, &c. of the lease, her estate in the premises became absolute, to all intents and purposes as if she never had demised the premises. Of course, if she could by a contingency that might happen, be re-seised of her former estate, she could not have designed to deprive herself or her heirs of her estate in the lands, and therefore she never granted any portion of them (except by the marriage) to her husband. He consequently can have no greater estate in these rents or the lands demised than such as he is entitled to as tenant by the curtesy of her other lands. The lands may become absolutely forfeited. *Coke Littleton,* section 325; 5 *Serg. & Rawle* 375; 3 *P. R.* 464; and the benefit of the forfeiture can enure only to the donor, lessor, &c. 2 *Cruise,* title 13. "Estates on condition," Ch. I. sec. 15, and not to a stranger. *Ibid.*

I may add to this deduction from the language of the leases, a matter of fact which I consider conclusive as to the understanding of Pentland himself in regard to the extent of his estate in these rents. On the 17th November 1841, he presented a petition to the Orphans' Court, which is No. 36 of October Term 1841, praying for the appointment of a guardian for his son, in which he recites "that the said Mary Pentland, wife of the petitioner, died leaving issue a child Andrew Watson Pentland, to whom by the laws of this Commonwealth the title to the said real estate descended, subject to the life estate therein of this petitioner." On the same day William Pentland presented another petition to the Orphans' Court for the appointment of auditors to ascertain the amount of his liabilities and the quantum of his estate, &c., in which he makes the same recitals as above, and in which he enumerates the very ground-rents in question, and swears to the petition; that is, he swears that " the title to these ground-rents

(inter alia) vests in his son, subject to the life estate of William Pentland." Besides, the auditors in their report say expressly, that "the interest of the petitioner William Pentland in the premises is a tenancy by the curtesy." On the 13th December 1841, William Pentland presented his petition to the Orphans' Court for leave to sell a portion of his wife's estate, in which he recites that "the interest of your petitioner in the said premises is a tenancy by the curtesy; and the interest of the said minor is a reversion expectant upon the determination of the life estate of this petitioner." He swears to this petition too. And if these recitals do not amount to a declaration of trust, I am at a loss to see what would amount to such declaration. Now, if the leases negative the idea of any act of the wife manifesting an intention to increase the estate of her husband in her lands, surely these recitals and oaths manifest clearly that no such intention ever entered the head of either husband or wife till it was found convenient for certain purposes to swell the life estate of the husband into an absolute fee-simple, the direct tendency of which too would be to shut out for ever the most remote hope of payment of a large number of meritorious creditors.

But it will be said on the other side that the plaintiff is an innocent purchaser without notice. How can he pretend this? The property was in the possession of the sequestrator at the time. This was a matter of record; besides, unequivocal possession has been always deemed notice; and there is nothing in this case to exempt the purchaser at sheriff's sale from the usual consequences of such notice. In addition to this, it is a matter of record that the purchaser himself conducted the levy and sale, procured the defendant to waive inquisition, and to consent to a sale on a *fieri facias* to July Term 1843. How, then, can he pretend want of notice?

The courts in Pennsylvania have gone great lengths to prevent the alienation of the wife's real estate. The Legislature too seem to incline the same way. The Act of February 1770, had in view the restraining the power of the married woman over her own property (real) to the one mode of alienation; and the 48th section &c. of the Act of 29th March 1832, title partition in the Orphans' Court, seems to have the same object. The courts, seconding these views, have decided that a *feme covert* shall be deemed to have no power of alienation or to encumber other than what is expressly given or reserved in the instrument that creates the trust. 1 *Rawle* 147; 2 *Whart.* 11; 3 *Whart.* 309; and cases cited. Executors have no right to pay a debt of the husband with a legacy left to the wife, without the order or consent of the husband. 3 *Whart.* 415. Even personalty secured for the separate use of the wife is not liable to be levied on for the debts of the husband. 5 *Whart.* 117; *Ibid.* 44. If the trustees of a married woman's estate die, so that the estate falls to herself, the husband will not be permitted to

touch the fund until he secures it as it was in the hands of the trustees. 11 *Serg. & Rawle* 255. Chief Justice TILGHMAN, in *Huston* v. *Hamilton*, (2 *Binn.* 393), says, " If the husband takes but an estate for life, the remainder goes where, unless there is a clear intent to the contrary, it ought to go, to the heirs of the wife, where it belonged." Chief Justice GIBSON, in the case of *Ferree* v. *The Commonwealth*, (8 *Serg. & Rawle* 315), uses still stronger language. See also *Stoolfoos* v. *Jenkins*, ( *Ibid.* 167), " It never was an object with the Legislature to transfer the real estate of the wife to the husband. For myself, I shall never consent to give effect to a claim by the husband, or those in his stead, to what was at any time the wife's real estate, where it is possible to defeat it by any construction, however forced." 5 *Watts & Serg.* 501.

As to equity of redemption of the wife's lands, see 1 *Vern.* 213 ; *Ambl.* 687 ; also *Weeks* v. *Haas*, (3 *Watts & Serg.* 520), where the Chief Justice puts it on its true ground, upon the consideration. Also *Demarest* v. *Wynkoop*, (3 *Johns. Ch.* 129), and 2 *Pick.* 517.

The courts have gone far on the subject of trusts. As to resulting trusts, see 10 *Ves. Jun.* 360 ; 1 *Ves.* 375 ; 15 *Ves.* 43 ; 1 *P. Will.* 321 ; 1 *Equit. Cas. Ab.* 380 ; 2 *Ibid.* 744 ; 1 *Atk.* 60 ; 2 *Atk.* 150 ; *Cox* v. *Grant*, (1 *Yeates* 164) ; *Fogler* v. *Goback*, (2 *Ibid.* 119) ; *Gregory* v. *Setter*, (1 *Dal.* 193) ; *Thompson* v. *White*, (*Ibid.* 424) ; 3 *Binn.* 302. I have consulted *Chew's Case*, (5 *Rawle* 160) ; 1 *P. R.* 389 ; 1 *Watts* 309 ; 2 *Rawle* 136 ; 16 *Serg. & Rawle* 60 ; 5 *Watts* 205 ; 17 *Serg. & Rawle* 361 ; 8 *Watts* 519 ; 4 *Whart.* 22 ; 1 *Rawle* 455.

The court will see that the law for which the gentleman on the other side contends may be conceded to be the law where there is a direct grant to husband and wife of something which they or either of them never enjoyed before; but it must be a case where the grant is clear and unequivocal; where there is no room left to doubt as to the intended bounty of the donor. But suppose that some striking undoubted fact negatived the intention to grant to husband and wife; would the law, whatever its deductions under other circumstances might be, disregard this intention? Certainly not.

*M'Candless*, for defendant in error.

Before the statute *Quia Emptores*, (18 *Ed.* 1, *A. D.* 1290), where a man had made a feoffment in fee-simple, by deed or without deed, yielding to him and his heirs a certain rent, this was a rent service. See *Litt.* 216. The estate of the feoffee was a fee farm, and that of the feoffor was a rent service. The tenant in fee farm was not bound to pay relief, or do any other thing that was not contained in the feoffment but fealty. *Terms de la Ley, Voce, Fee Farm, p.* 220 ; *Adams on the Law of Distress* 22 ; *Co. Litt.* 142. In England this fee farm or rent service is converted into a

rent charge by force of the *Stat. Quia Emptores,* which pre-
vented subinfeudation in fee, unless by the chief lord, and since,
Blackstone says, (2 *Bl.* 43), a fee farm rent is a rent charge issu-
ing out of an estate in fee, and is only letting lands to farm in fee-
simple instead of the usual methods of for life or years.

But as that statute is not, and never was, in force in Pennsyl-
vania, a feoffment in fee reserving rent, remains a rent service.
*Ingersoll* v. *Sergeant,* (1 *Wharton* 337). And upon a feoffment
in fee, the entire estate vests in the feoffee, and he holds from the
Commonwealth as the feoffor held, subject to fealty only, with the
right of escheat in default of heirs or kindred to inherit. I say in
the Commonwealth, because by the devesting Act of 27th Novem-
ber 1779, the fealty due, and all possibility of revestiture in the
proprietary's family was vested in the Commonwealth. The
inheritance in the lands passes by the feoffment to the feoffee, and a
new estate of inheritance is created by the reservation; and this
point is determined in *Scott* v. *Lunt,* (7 *Peters* 596), where it is
held law that a fee farm rent is an estate of inheritance. That our
ground-rents in fee are estates of inheritance, see *Ingersoll* v. *Ser-
geant,* (1 *Whart.* 359, 360). It is said that without a reversion in the
feoffor there cannot be a rent service created. This, in reference
to the operation of the statute *Quia Emptores,* is true; but as that
statute does not operate on our estates, every feoffment in fee
reserving a rent certain is a rent service in Pennsylvania.

The tenant is seised of an estate in fee-simple upon condition at
common law, and the reverter or bare possibility of the feoffor to
have again his estate, is not, by the operation of the *Stat. de Donis,*
A. D. 1285, changed into an estate in reversion, inasmuch as the
reverter or bare possibility is vested in the Commonwealth, to
whom the land will escheat when the inheritable blood of the
tenant expires. The statute *De Donis* was passed purposely to
overreach fee-simples conditional, and prevent the person seised
of such an estate from alienating it, when he had performed the
condition. *Litt., sect.* 13; *Co. Litt.* 19; 2 *Bl.* 112. But the fruits
of the statute were opposed to our landed institutions; and by
Act of Assembly the donor's ultimate estate expectant is docked
by an ordinary conveyance when entered on record on motion in
court, thus showing that the law abhors perpetuities, so much so,
that by an open and avowed act done in open court, the intention
of the donor and his perpetual estate may both be defeated; and
there is no difference, in the principle, whether this supposed
reversion remains in the feoffor after having given away an estate
of inheritance, or in the donor; they both tend to create perpetui-
ties, if the mind should give equal support to them.

The feoffment by Pentland and wife, however, creates an estate,
although conditional at common law. Yet as the estate must be
defeated, if at all, by forfeiture, it is submitted whether forfeiture
in such case exists in Pennsylvania. The re-entry given to the

[Robb v. Beaver.]

lessees, their heirs or assigns, is not for the purpose of defeating the lessee's estate, but by way of distress for satisfaction for this rent in arrear. And upon payment of the rent in arrear and costs, the tenant is entitled to be restored to his possession; and although it is stipulated that if the arrears be not paid in five years then the possession of the lessor who enters shall become absolute, as if the indenture never had been made, yet as courts relieve against mortgagees who enter upon clauses as positive as this, they will also relieve the tenant under such conditions as are purely for payment of money. It has been adjudged that the lessor entering upon the premises of his tenant under such a condition where it is only to compel the payment of rent, gains no freehold by such entry; and that when the yearly sum due upon such a feoffment is assigned by the feoffor, such assignment carries with it the right of entry also. See *Co. Litt.* 203, *note* 5, and the cases there cited. But if the condition be such that the re-entry defeats the estate, the case is very different; but still even in that case, as the law abhors forfeiture, and the tenant having complied with the principal condition, which was to build and complete buildings rendering the tenement productive and valuable, the courts, in the exercise of just and equitable powers, would restore the tenant on payment of what was justly due.

It seems, then, that this would have been an estate of inheritance at common law; and the argument that the lessors retain a reversionary interest is not supported even by the old cases. And it seems clear, too, that the tenure by which the people of Pennsylvania held from the Proprietors was free socage, to which fealty only was incident; the same that is already termed fee farm; and that all the tenant could acquire from them was an estate of inheritance : and when such tenant granted away such an estate, no part of the original estate or its incidents could remain in him. Pentland and wife being then seised of the rent by entireties, the survivor takes the whole. *Co. Litt.* 187; *Freestone* v. *Parratt*, (5 *T. R.* 652); *Back* v. *Andrews*, (2 *Vern.* 120); *Green* v. *King*, (2 *Blac. R.* 1211; 4 *B. & Adol.* 303; *Prec. in Chan.* 1; 2 *Preston on Abstracts* 39.

The law is the same whether it be in remainder, reversion, or possession. 2 *Levinz* 39; *Co. Litt.* 187; *Litt. sec.* 673; 1 *Dana's Ky. Rep.* 37; 3 *Randolph's Rep.* 183-4-5; 3 *Rep.* 5; 1 *Dana's Ky. Rep.* 243; 4 *Kent's Com.* 362; 2 *Bl. Com.* 182; *Jackson* v. *Stevens*, (16 *Johns. Rep.* 110); *Rogers* v. *Benson*, (5 *Johns. Chan. Ca.* 437); *Shaw* v. *Hearsey*, (5 *Mass.* 521); *Den* v. *Hardenbergh*, (5 *Halst.* 42); *Terms de la Ley* 271; 3 *Keb.* 11; 2 *Saunders* 380; 1 *Levinz* 11, 135; *Allen* v. *M'Masters*, (3 *Watts* 181); *Pratt* v. *Lewis*, (4 *Whart.* 22); *Gibson* v. *Todd*, (1 *Rawle* 455).

That a party is estopped by his own deed from denying the facts contained in or alleging a claim inconsistent with it. 2 *Roll.*

VIII.—16  **L**

*Ab.* 447; *Co. Litt.* 47; 1 *Wharton* 356; *Bell* v. *Brown*, (1 *Howard* 169); *Law Journal, Vol.* 3, *No.* 2, *p.* 48, 49; 6 *Binn.* 418; 1 *Shep. T. S.* 77; 2 *Ibid.* 246. Sealed writings explain themselves; and it is the province of the court to declare the intention of the parties and their motives from the writing, unless impeached for fraud.

1. By the common or ancient law husband and wife could convey the inheritance in lands of which the husband was seised in her right, by two modes of common assurance.  1. By a common recovery.  1 *Preston Con.* 254 to 257; *Co. Litt.* 122.  2. By acknowledgment of a feoffment of record.  *Co. Litt.* 50.  This latter mode is called a " fine," because it is founded on an actual suit, and the acknowledgment on record puts an end to all controversies between the same parties for the same land.  Its several parts; 1. Writ of covenant; 2. License to agree; 3. The concord of agreement; 4. Record; 5. Foot or indenture of the fine; 6. Proclamations.  Common recovery was much more complicated, and therefore disused.

2. If tenant by the curtesy became seised of the freehold by the birth of a son who could inherit the land, yet the father could lawfully alien this land and defeat the entry of the son after the father's death by binding him to warranty.  This was remedied by 6 Ed. 1, cap. 3, A. D. 1278, by making void the warranty unless assets of equal value descended to him from his father.  So that the warranty of the tenant by the curtesy with assets, is a good plea in bar of the heir of the mother.  *Rob. Dig., stat.* 208-9. By fine levied in the King's Court the heir was barred.  This mode of warranty was excepted by the statute, and

3. This gave rise to the 32 Henry 8, cap. 28, A. D. 1540, prohibiting the husband and wife from creating long leases or disposing of the wife's inheritance longer than during the coverture, &c., (without it be by fine levied by husband and wife).  From this statute, however, feoffments of record by husband and wife are excepted.  See 6 *Rob. Dig.* 221.  Therefore I presume there was nothing to prevent husband and wife from conveying the lands of the wife for " a fee farm rent, rent charge, or other rent," not inconsistent with the rights of the lord of the fee.

By the laws agreed upon in England, it was provided that all grants of lands should be in a certain form ; that to avoid complex conveyances a short form was annexed to the law; three estates could be created, and the grant must determine which—inheritance for life or for years—to be acknowledged in court and enrolled; A. D. 1682; laws agreed on, sect. 78, *Prov. Laws Penn.*; Act of 24th Feb. 1770, *Stroud's Purd.* 275-6, an Act for the better confirmation of estates of persons holding or claiming under feme coverts, and for establishing a mode by which husband and wife may hereafter convey their estates. " Whereas it has heretofore been the custom and usage, ever since the settlement

of this province, in transferring the estates of feme coverts, in many cases for the husband and wife to execute the deed in presence of witnesses only ; and in other cases after such execution to acknowledge the same before a justice of the peace, &c., &c." Sect. 1 confirms all bargain and sales, lease and releases, feoffments and other deeds of assurance whatsoever, *bonâ fide* made, &c. · " Sect. 2. Be it enacted that where any husband and wife shall hereafter incline to dispose of and convey the estate of the wife, or her right of, in, or to any lands, tenements, or hereditaments whatsoever, it shall be lawful to and for the said husband and wife to make, seal and deliver any grant, bargain and sale, lease, release, feoffment, deed, conveyance or assurance in the law whatsoever, &c." Acknowledgment before one of the Judges of the Supreme Court, or a justice of the County Court, Court of Common Pleas ; the Judge taking such acknowledgment to examine the feme separate and apart from her husband, and read or otherwise make known to her the contents; and if upon such separate examination she declares that she did voluntarily, and of her own free will and accord, seal, and as her act and deed deliver the said deed of conveyance without any coercion or compulsion of her husband, such deed shall be as good, to all intents and purposes, as if she had been feme sole, and not covert, any law, usage, &c.

If a man seised of lands of the part of his mother makes a lease for life or gift in tail, reserving rent to him and his heirs, this rent shall go with the reversion to the heirs of the part of the mother ; because the nature of the contract is such, that the retribution should go to those that lose the profit of the lands during the lease or gift. *Co. Litt.* 12 *b*. But if he had made a feoffment in fee reserving rent to him and his heirs, this rent shall go to the heir of the part of the father ; because here is an entire disposition of the lands, and the rent is in the nature of a new purchase, coming into the family from the grant of the feoffee ; and therefore the blood of the father shall be preferred, *Co. Litt.* 12 *b* ; *Gilbert on Rents* 72 (*marg.*). And where the lease is by deed indented by sundry lessors, they are estopped to claim the rent in any other manner than it is reserved in the deed, because the indenture is the deed of each party, and no man shall be allowed to recede from his own solemn act. 2 *Roll. Ab.* 447 ; *Co. Litt.* 47.

A rent charge or rent service which is reserved on a grant in fee, is a fee farm rent. The name is founded on the perpetuity of the rent or service, and not on the quantum. *Harg., n.* 5 ; *Co. Litt.* 144 ; *Doug.* 605. And it seems that a rent service is inseparable from the reversion ; so that granting lands at this day, reserving a rent in fee, would be a rent charge. 3 *Bl. Com.* 43 ; *Woodfall L. & T.* 108. A rent charge is where the owner of the rent has no future interest expectant in the land or reversion ; as where a man maketh over by deed his whole estate in fee-simple with a certain rent payable thereout, and adds to the deed a cove-

[Robb v. Beaver.]

nant or clause of distress that if the rent be in arrear or behind it shall be lawful to distrain for the same ; in this case the land is not liable to distress of common right, but by virtue of the clause in the deed. *Woodfall* 108 ; *Gilbert on Rents* 15, 16, 20 ; *Co. Litt.* 217 *a*, 218 ; *Gilbert* 28 ; *Co. Litt.* 139 ; *Cro. El.* 595 ; 2 *Co.* 54. By the statute *De Donis, Westm.* 2, the feudal right of reverter was turned into a reversion in the feoffor, the law for the former reasons obliged the tenant in tail to do the same services to the donor which he was obliged to by his superior lord : because this was an estate of inheritance, and might possibly last for ever. *Gilbert on Rents* 12 ; *Co. Litt.* 23 *a*, sec. 19.

Reservation is a clause in a deed whereby the feoffor, grantor, or lessor, reserves some new thing to himself out of that which he granted before. Reservation differs from an exception : the latter is ever part of the thing granted, and of a thing *in esse* at the time; while the former is of a thing newly created or reserved out of the thing demised that was not *in esse* before. In every good reservation four essentials must be observed. 1. Reservation must be by apt words, as yielding, paying, reserving, &c. 2. It must be something issuing out of the thing granted or demised, and not part of the thing itself. 3. It must be out of such thing whereon the grantor can resort to distrain. 4. It must be made to the grantor, and not to a stranger ; so that by a *reddendum* the reversion or inheritance cannot be reserved, as such a reservation in a feoffment in fee would be repugnant to the grant. *Plow.* 132 ; *Co. Litt.* 47 ; *Plow.* 13 ; 8 *Co.* 78. See particularly *Sheppard's T.* 163.

In an exception, six essentials must occur. 1. Apt words to make it one. 2. It must be part of the thing granted, and not any other. 3. It must be part only, and not all of anything granted. 4. It must be a particular thing out of a general thing, and not *vice versâ.* 5. It must be such as he may have as doth properly belong to him. 6. It must be of such a thing as is severable from the thing granted. *Sheppard's T.* 77, 78, 79 ; *Co. Litt.* 47.

1. A. B. covenants to pay the rent yearly for ever, the taxes and assessments during the term. 2. Distress reserved and re-entry when two years' rent are in arrear, subject to the tenant's right to pay such arrears and what may accrue, and costs, within the term of five years. 3. Also subject to re-entry by the lessors, if tenants fail to complete the buildings on the premises, to hold until the tenant shall give satisfactory security that the covenant will be complied with if that be done within five years after re-entry ; " in such case the title of the said William Pentland and Mary his wife, their heirs and assigns, to become absolute in the premises in law and equity, to all intents and purposes as if this indenture had never been made."

Estates upon condition are of two sorts. *Co. Litt.*, sect. 325, *p.* 201. 1. Condition in law is where the law annexes a condition

[Robb v. Beaver.]

to the contract of the parties without words used to express the same : 2. Condition in deed ; as where a man by deed indented enfeoffs another in fee-simple, reserving to himself and his heirs a yearly certain rent, payable at one or divers days, per annum : and if the rent be behind, it shall be lawful for the feoffor and his heirs to enter into the lands and tenements, or if the rent be behind a week, month or year, that then the feoffor and his heirs may enter. In these cases, if the rent be not paid, the feoffor may enter and hold as of his former estate and interest thereof. This is an estate upon condition, because the estate of the feoffor is defeasible if the condition be not performed. If the feoffor assigns to another the annual sum, the right of entry and perception of the rents, issues and profits of the land charged with the payment, passes to the assignee. *Co. Litt.*, sect. 327, *Harg.*, note 3. If two years' rent be in arrear, the feoffors, their heirs and assigns may re-enter ; and the estate of the assignees is also to become absolute in the premises, &c.

It is barely possible that the rents, issues and profits of the premises will not always more than pay the ground-rent and taxes, so that it is altogether impossible that a re-entry was even dreamed of, defeating the feoffment after the buildings were put on the lot ; but in case the tenant failed in the covenant to build, then the restoration of the seisin might have been contemplated by the feoffors. But the right of entry, if exercised, would not restore the seisin ; for the feoffors, their heirs or assigns, must hold for the tenant for five years, and then if the arrears be not paid, the estate becomes absolute.

The inheritance under these leases vested immediately in the lessees, because the grant is to S. W., his heirs and assigns for ever, in consideration of a rent covenanted to be paid to the feoffors, their heirs and assigns for ever. The rule in *Shelly's Case* settles the point that the estate for life and the inheritance at once coalesce when limited to the same person, although there are intermediate remainders or conditions. *Co. Litt.* 376 *b*, note 1. And the word "term" not only signifies "interest," but "time." 8 *Co.* 95 ; 1 *Burr.* 282 ; 2 *Bl. Com.* 144 ; 1 *Rep.* 153.

In *Weeks* v. *Haas*, (3 *Watts & Serg.* 520), Henry Repley died seised of a tract of land, leaving issue three children. Partition was made, and Gilger intermarried with Elizabeth, and John Repley released to Jesse Weeks, who married Mary Repley. Weeks and wife released to Gilger and Repley respectively for their third part each. They released to Weeks, and he paid them $91, the difference for owelty. Mary Weeks never executed any conveyance for her own share of the estate. The sheriff sold the interest of Jesse Weeks, and the purchaser had notice that Weeks had only a life estate. The court decided that Mrs Weeks might have conveyed if she chose ; but as she did not, and the object of the parties was partition and not conversion, a purchaser with notice was

L *

[Robb v. Beaver.]

bound. But if he had not notice he would hold the fee. The statute (say the court) gives the wife power over her own property, and she could have contracted on her own terms. There is no evidence whatever that she intended to make a gift of it to her husband. The only intention that appears was to reserve her interest, release the others, and take back an equivalent. This is shown by the deeds, which are all *in pari materia,* and constitute one agreement. This is not a new principle. *Kean* v. *Ridgway,* (16 *Serg. & Rawle* 60.) In *Davey* v. *Turner,* (1 *Dall.* 11), husband and wife conveyed the lands of the wife to trustees, in trust for themselves during their joint lives, and to the survivor in fee, and the deed was acknowledged in the usual way. *Held,* that the deed was valid. *M'Glinsey's Appeal,* (14 *Serg. & Rawle* 64), is a case where, from the circumstances, the intention of the wife to make a gift to her husband of the profits of her separate estate was presumed. Pentland's case is infinitely stronger. In *Dallam* v. *Wampole,* (1 *P. C. C.* 116), the wife by writing directed the profits of her separate estate to be paid by her trustee to her husband. *Hamersley* v. *Smith,* (4 *Whart.* 126), was a trust for the wife, but ceased on her becoming discovert, and then making an assignment with her second husband. The trustees were held entitled to recover it from the executors. In *Pratt* v. *Lewis,* (4 *Whart.* 22), husband and wife sold the estate of the wife to one of their children, took a bond, and stipulated for maintenance, &c. After the decease of the husband, the wife cancelled the first bond, and recited that she was then a married woman, and incapable of contracting, &c. *Held,* the bond could not be cancelled by her. Where a husband takes a joint obligation to himself and wife for a debt due to herself alone, it is a gift to the wife, who takes as a joint purchaser, and by survivorship, and in her own right, unless the proceeds should be wanted on a deficiency of assets, for payment of debts or perhaps legatees. *Gibson* v. *Todd,* (1 *Rawle* 455.)

The opinion of the Court was delivered by

SERGEANT, J. — The opinion of the court below seems to us to be founded on the settled principles of our law with regard to the transfer and tenure of real estate and the power of the husband and wife by deed acknowledged to part with the wife's estate. The execution of this deed was a transfer of the whole right, interest, and property of both husband and wife in the land. It passed to the purchaser a fee-simple which Lord COKE says is the fullest and most absolute estate which a person can have in lands. The annexing to it a condition of re-entry for non-payment of rent or failure to build, did not diminish the quantity of the estate; it only rendered it liable to be defeated in case the condition were broken and due advantage were taken of the forfeiture. There was no reversion or residue of estate remaining in the grantors. There was fealty due in consequence of the tenure of land in Penn-

[Robb v. Beaver.]

sylvania not being subject to the operation of the statute *Quia Emptores Terrarum.* This was sufficient to make the rent technically a rent-service; but a rent in fee-simple, whether created at the time of the grant of the land and by the same deed, or by another conveyance, is a new estate distinct from the land, and a total change of the property. This was so held in *Skerrett* v. *Burd*, (1 *Whart.* 246), where a person seised of lands in fee-simple made his will devising those lands, and afterwards sold and conveyed a portion of those lands in fee-simple upon ground-rents; and it was held these ground-rents did not pass under the devise, but the conveyance on ground-rent was a revocation of the will *pro tanto.* The nature of such a transaction was fully examined in that case, and it was deemed to be a total alienation of the prior estate in the land, and the acquisition of a new estate in the rents.

The case is then the same as if the fee-simple in this rent had been conveyed by a third person to the husband and wife and their heirs. It would be in them an estate by entireties, and on the death of either, would go to the survivor in fee.

Judgment affirmed.