## Diver *versus* Diver.

1. The Act of March 31st 1812, abolishing joint tenancy, does not apply to a joint estate of husband and wife.

2. The Act of 11th April 1848 does not convert such estate into a tenancy in common.

3. The single design of the Act of 1848 was to protect the wife's property by removing it from under the dominion of the husband, not to destroy the oneness of husband and wife.

4. The act had not in view the force and effect of the instrument by which the estate may be granted to her, but regulates its enjoyment after it has vested in her.

5. The act no more destroys her union with her husband than a settlement to her separate use.

6. The act is remedial, and is to be construed to suppress the mischief at which it was aimed, not to alter the common law further than is necessary to remove the mischief.

October 30th 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Error to the Court of Common Pleas of *Armstrong county:* No. 76, to October and November Term 1867.

The action was ejectment, by Samuel Diver against Margaret Diver, commenced August 12th 1863, for 113 acres of land.

The plaintiff was a brother of John Diver, deceased, as whose heir he claimed the land, alleging that the title was in John at the time of his death. The defendant is the widow of John. On the trial it appeared that Catharine Diver, the mother of John, was living; she was substituted as plaintiff in the place of Samuel.

The land had belonged to Robert White and Alexander White. Robert White died about 1827, leaving four daughters, Elizabeth, Rebecca, Susan, and Margaret the defendant. In 1841 Alexander White conveyed his interest in the land to Robert's daughters. Margaret was married to John Diver in or before 1844. Elizabeth afterwards died intestate and without issue.

On the 24th of March 1849 Rebecca, then the wife of Noah A. Calhoun, and Susan, then the wife of Moses Dill, with their husbands, made a deed to John Diver and Margaret his wife, which, after reciting their title, is as follows:—

"Now know ye, That the said Noah A. Calhoun and Rebecca his wife; Moses Dill and Susannah his wife, for and in consideration of the sum of two hundred dollars, to them in hand paid by John Diver and Margaret his wife, one hundred dollars of which was paid by the hand of Elizabeth White, since deceased, it being in full of her part that she was to pay, by her father's will, bearing date January 11th, A. D. 1827, for the price of twenty-seven and a half acres, bequeathed her by her said father, Robert White, deceased, to her, which she has left for the use of John

[Diver v. Diver.]

Diver and Margaret his wife, of the second part, at and before the sealing and delivery hereof, the receipt whereof they do hereby acknowledge and thereof acquit and for ever discharge the said John Diver and Margaret his wife, their heirs, executors and administrators, by these presents, have * * remised, released for ever quit claim * * * unto the said John Diver and Margaret his wife, and to their heirs and assigns, all the estate and estates, shares, purparts and dividends, right, title, interest, property, claim and demand whatsoever, of them the said Noah A. Calhoun and Rebecca his wife, Moses Dill and 'Susannah his wife, in law or equity, or otherwise howsoever, of, in, to or out of all that messuage, * * * now in the actual possession and seisin of the said John Diver and Margaret his wife, now being bounded and limited as follows, viz., &c. * * * To have and to hold, all and singular, the premises hereby remised and released, or mentioned and intended so to be, with the appurtenances, unto the said John Diver and Margaret his wife, with their heirs and assigns, to the only proper use and behoof of the said John Diver and Margaret his wife, their heirs and assigns for ever, so that neither of the said Noah A. Calhoun and Rebecca his wife, Moses Dill and Susannah his wife, nor their heirs, nor any other person or persons whomsoever, lawfully claiming or to claim, by, from or under them, or any of them, shall or may, at any time or times hereafter, have, * * * any estate, right, title or interest, of, in, to or out of the said messuage before described, or intended so to be, with the hereditaments and premises hereby remised and released, or intended so to be, with the appurtenances, or any part or parcel thereof; but thereof and therefrom shall and will be excluded and for ever debarred by these presents."

There was other evidence, which did not bear on the question decided by the Supreme Court.

The plaintiff, amongst other points, submitted the following :—

2. "Under the deed of 24th March 1849, John Diver and Margaret Diver became tenants in common of the land in dispute, and since the passage of the Act of 1848, relating to the rights of married women, the right of survivorship in the wife does not exist."

3. "If Margaret Diver paid for the land in dispute, and consented that the deed should be made to herself and husband as tenants in common, she thereby yielded her right to the one-half of the land, and the money paid therefor, and the same became a vested estate in the husband, which she could not revoke after his death; but said estate would pass to his collateral heirs, in default of issue."

The court (Campbell, P. J., of the 18th district) answered the points :—

"We answer the 2d point : that we think no estate survives in

[Diver *v.* Diver.]

the land in dispute; and that John Diver's heirs cannot recover in this suit."

" We answer the 3d point: that Margaret Diver being the defendant, could set up any title that would defeat plaintiff."

. The judge further charged:—" Under all the evidence in the case, we are of opinion that all the title John Diver has, or could claim, was under the deed of 24th March 1849; that being made to the husband and wife, we think, on the death of the husband, the title to the whole would continue in the wife."

. The verdict was for the defendant.

The plaintiff took a writ of error, and assigned for error the answers to the points and the above portion of the charge.

*E. S. Golden*, for plaintiff in error, cited Broad *v.* Broad, 2 Chan. Ca. 98, 161; Ruscombe *v.* Hare, 6 Dow's Parl. Cas., 1 Vern. 213; 2 Id. 437, 120; 2 Roll. Abr. 447, 798; Co. Litt. 47; 4 Cruise Dig. 140, 141; 5 Rep. 57; Swanton *v.* Raven, 3 Atk. 105; Ferree *v.* Commonwealth, 8 S. & R. 315; Pratt *v.* Lewis, 4 Whart. 22; Robb *v.* Beaver, 8 W. & S. 109; Benedict *v.* Montgomery, 7 Id. 238; Act April 11th 1848, Purd. 699, pl. 11, *et seq.*, Pamph. L. 536; 2 Black Com. 182; 8 Rep. 71, b.; Act March 31st 1812, § 1; 5 Sm. L. 395; Stuckey *v.* Keefe, 2 Casey 397; Martin *v.* Jackson, 3 Casey 504; Acts April 11th 1856, § 3, Purd. 702, pl. 29, Pamph. L. 315; April 15th 1851, § 22, Purd. 701, pl. 19, Pamph. L. 675; Rangler *v.* Hummel, 1 Wright 130; Pettit *v.* Fretz, 9 Casey 118; Bear *v.* Bear, Id. 525; Walker *v.* Reamy, 12 Id. 410; Rancord *v.* Kuhn, Id. 383; Manderbach *v.* Mock, 5 Id. 43; Stoner *v.* Zimmerman, 9 Harris 402; Hoar *v.* Axe, 10 Id. 381; Rhoads *v.* Gordon, 2 Wright 277; Amperse *v.* Burdeno, 5 Am. L. Reg. N. S. 275; Martin *v.* Jackson, 3 Casey 504; Bates *v.* Seely, 10 Wright 248; Arnold *v.* Jack, 12 Harris 57.

The court declined to hear *J. Boggs*, for defendant in error. He cited in his paper-book Peck *v.* Ward, 6 Harris 506; Thorndell *v.* Morrison, 1 Casey 326; Ulp *v.* Campbell, 7 Harris 361; Stoops *v.* Blackford, 3 Casey 214; Davis *v.* Davis, 10 Wright 342; Stehman *v.* Huber, 9 Harris 260; McKinney *v.* Hamilton, 1 P. F. Smith 63; 2 Black. Com. 147; Freestone *v.* Parratt, 5 T. R. 654; 8 Rep. 71; 2 Vern. 120; Robb *v.* Beaver, 8 W. & S. 111; Stuckey *v.* Keefe, 2 Casey 397; Martin *v.* Jackson, 3 Id. 504; Auman *v.* Auman, 9 Harris 347; Mahon *v.* Gormley, 12 Harris 82; Pettit *v.* Fretz, 9 Casey 121; Bear *v.* Bear, Id. 525; Glidden *v.* Strupler, 2 P. F. Smith 400; Amperse *v.* Burdeno, 5 Am. L. Reg. 275.

The opinion of the court was delivered, November 4th 1867, by

[Diver v. Diver.]

STRONG, J.—It is conceded (unless the Act of April 11th 1848, commonly called " The Married Woman's Act," has changed the rule) that under a deed to husband and wife, the grantees do not take by moieties, but each becomes seised of the entirety, holding "*per tout et non per my.*" This is a necessary consequence of the legal doctrine that a husband and wife are one person. Hence, on the death of either, the whole estate remains in the survivor, nothing descending to the heirs of the decedent. Nor does the Act of March 31st 1812, which abolished survivorship among joint tenants, apply to such an estate, for it is not a joint tenancy: Robb v. Beaver, 8 W. & S. 107; Auman v. Auman, 9 Harris 343.

But it is said the Act of 1848, by destroying the legal unity of the husband and wife, has converted such an estate into a tenancy in common ; that is, that such a deed conveys a different estate from that which the same deed would have created, if made prior to the passage of the Act. To this we cannot assent. It mistakes alike the letter and the spirit of the statute, imputing to it a purpose never intended. The design of the legislature was single. It was not to destroy the oneness of husband and wife, but to protect the wife's property, by removing it from under the dominion of the husband. To effectuate this object, she was enabled to own, use and enjoy her property, if hers before marriage, as fully after marriage as before. And the act declared that if her property accrued to her after marriage, it should be owned, used and enjoyed by her, as her own separate property, exempt from liability for the debts and engagements of her husband. All this had in view the enjoyment of that which is hers, not the force and effect of the instrument by which an estate may be granted to her. It has nothing to do with the nature of the estate. The act does not operate upon rights accruing to her until after they have accrued. It takes such rights of property as it finds them, and regulates the enjoyment; that is, the enjoyment of the estate after it has vested in the wife. And the mode of authorized enjoyment is significant. It is to be as her separate property is enjoyed, as property settled to her separate use. The act therefore no more destroys her union with her husband than does a settlement of property for her separate use. To a certain extent she is enabled, but no more than is necessary, to protect her property after it has been acquired. We have held that she can convey her lands only by joining in a deed with her husband: Pettit v. Fretz, 9 Casey 118. This is a clear recognition of the existing unity of the two. It need not be repeated that no greater effect is to be given to the Act of 1848 than its language and spirit demand. It is a remedial statute, and we construe it so as to suppress the mischief against which it was aimed, but not as altering the common law any fur-

[Diver *v.* Diver.]

ther than is necessary to remove that mischief. To hold it as operating upon the deed conveying land to a wife, making such deed assure a different estate from what it would have assured without the act, is to lose sight of the legislative purpose. Were we to do so, it would become in many cases a means of divesting her of her property, instead of an instrument of protection. In the present case, if it has converted the estate granted to Diver and his wife into a tenancy in common, it has taken from her her ownership and enjoyment of the entirety during her husband's life and her right of survivorship to the whole. On this subject the remarks of Chief Justice Lewis in Strickley *v.* Keefe's Executors, 2 Casey 401, are worthy of attention.

We hold, then, that no such effect is to be given to the Act of 1848, or any of its cognate acts. The legal unity of husband and wife still remains, and consequently Mrs. Diver, on the death of her husband, succeeded to the whole estate granted by the deed.

It follows that there is no error in the record.

Judgment affirmed.